**MARYLAND DEPARTMENT OF HU-MAN RESOURCES, and Ruth Massinga, Secretary, Appellants,**

v.

**DEPARTMENT OF HEALTH AND HU-MAN SERVICES, and Margaret Heckler, Secretary, Appellees.**

No. 84–1571.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1985.

Decided May 23, 1985.

Ralph S. Tyler, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen., Baltimore, Md., on brief), for appellants.

Donna Helen Triptow, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., Beverly Dennis, III, Regional Atty., James C. Newman, Supervisory Asst. Regional Atty., Charlotte Hardnett, Asst. Regional Atty., Philadelphia, Pa., on brief), for appellees.

Before WINTER, Chief Judge, and SPROUSE and WILKINSON, Circuit Judges.

HARRISON L. WINTER, Chief Judge.

The State of Maryland, acting through its appropriate department and officers, seeks to require the federal government to bear the entire cost of Maryland's conceded errors in making payments out of federal funds to ineligible recipients and payments in incorrect amounts under the Aid to Families with Dependent Children (AFDC) program, 42 U.S.C. § 601 *et seq.* Recovery is sought in the amount of $124,417 for the period March 17, 1977 to March 31, 1979. Adopting the recommendation of a magistrate, the district court denied relief. Maryland appeals and we affirm.

I.

AFDC is a joint federal-state program under the Social Security Act, and participating states, whose programs are approved by the Department of Health and Human Services (HHS), receive federal funds to help finance their programs. 42 U.S.C. § 603(a). Federal funds are paid

quarterly in advance in the amount of the federal share of the program's estimated costs, reduced or increased by any sum by which the estimated amount of any prior quarter was less or more than the amount which should have been paid to the state for that quarter. 42 U.S.C. § 603(b).

The statute authorizing the program contains no provision explicitly identifying either a participating state or the federal government as the one to bear the financial burden of payments of federal funds to ineligible recipients or of overpayments to eligible ones. It simply directs the payment of federal funds to states having "an approved plan for aid and services to needy families with children" in an amount equal to stated fractions and percentages of the amounts expended by the state under the plan. 42 U.S.C. § 603. The statute fixes the minimum requirements for an approved state plan, 42 U.S.C. § 602, but here again there is no statutory direction with regard to the treatment of overpayments and payments to ineligibles. The Secretary has authority to make rules and regulations "not inconsistent with [AFDC] as may be necessary to the efficient administration [of the program]," 42 U.S.C. § 1302, and the Secretary has since 1971 provided by regulation that "[s]tate plan provisions on need, the amount of assistance, and eligibility determine the limits of Federal financial participation." *See* 45 C.F.R. § 233.-10(b)(1).

Beginning in 1971, the Secretary of HEW, the predecessor of HHS, adopted a "quality control" regulation. In 1975, as part of that effort, regulations were issued which provided, *inter alia,* that certain errors (3% for eligibility errors and 5% for overpayment errors) would be "tolerated." That is to say that errors below those tolerance levels would not result in loss of federal financial participation. *See* 45 C.F.R. § 205.41, 40 Fed.Reg. 21737 (May 19, 1975). Maryland, however, together with a number of other states, successfully attacked the validity of these regulations. They were held invalid in *Maryland v. Mathews,* 415 F.Supp. 1206 (D.D.C.1976). In that case, the district court ruled that

the Secretary had authority "to define an acceptable level of erroneous payments within which the state will be deemed to be complying with the Act in its administration of its state plan," *id.* at 1212, but it held that the 3% and 5% limits were fixed arbitrarily, without empirical study, and that they were invalid because "framed in an arbitrary and capricious manner and as an abuse of discretion." *Id.* at 1214.

Having won this skirmish, Maryland then proceeded to lose the war, because the Secretary did not appeal but immediately retroactively revoked § 205.41 and notified the states that they must adjust their reimbursement claims to exclude the federal share of *all* improper payments made by them after March 16, 1977. *See* 42 Fed. Reg. 14717 (March 16, 1977). In actuality, the Secretary held participating states to a strict liability standard. The Secretary did not adopt a new tolerance regulation until October 1, 1980. *See* 45 C.F.R. § 205.41 (1983). Within the period March 17, 1977 and March 31, 1979, Maryland made erroneous payments in the aggregate amount of $124,417. This amount has been confirmed by audit, and the fact that it represents overpayments and payments to ineligibles is not disputed.

The decision of HHS that Maryland must refund this sum by deducting it from future grants was sustained by the district court, and Maryland appeals. It contends that HHS lacks authority to fix a zero error tolerance level and further, since no state has or can satisfy such a standard, that the imposition of the standard is arbitrary, capricious, and an abuse of agency discretion.

## II.

We do not doubt that it is beyond the capacity of any state to administer an AFDC program error-free. *See Maryland v. Mathews,* 415 F.Supp. at 1214. But the issue before us is whether for the period in question HHS acted within its statutory authority and whether its action was arbitrary, capricious, or an abuse of discretion

in concluding in effect that financial responsibility for the misuse of federal funds in the AFDC program should be placed on the participating state that makes an improper disbursement rather than on the federal fisc. 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–17, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Fort Mill Telephone Co. v. FCC,* 719 F.2d 89, 91 (4 Cir. 1983). We conclude that the action of HHS must be sustained.

Since Maryland is the entity which disburses federal funds, and can therefore best safeguard against erroneous payments, absent a statutory or administrative direction that the financial impact of error should fall otherwise, it would seem equitable that the burden should fall on Maryland.[1] From our examination of the Act, we perceive no statutory direction that financial responsibility for improper disbursement of federal funds should fall on the federal government. *See Maryland v. Mathews, supra.* Indeed, the Act contemplates that federal funds will be paid to a state only in accordance with a share of the participating state's disbursements under its approved plan, and the plan strictly defines both eligible recipients and the amounts to which they are entitled. We reject Maryland's argument that the significance of the statute is that its language does not *prohibit* some degree of tolerance. We think its significance is that it does not *require* some degree of tolerance. With regard to the requirement that federal funds match a state's payments under its plan, there is no claim here that Maryland's plan makes any provision for error tolerance. During the period at issue in this litigation, there was no administrative direction that the federal government would bear responsibility for improper disbursement of its funds. Indeed, for this period, the administrative interpretation was that the federal government would *not* bear any such responsibility, and we are bound to give weight to that administrative interpretation of the Act, it not appearing that the Act requires a contrary reading. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

Aside from the dictum in *Maryland v. Mathews,* 415 F.Supp. at 1212, that the federal government is not required to fund any erroneous payments,[2] there is no controlling authority on the issue before us, and the case is one of first impression. However, other courts in dealing with parallel provisions in the Medicaid statute, 42 U.S.C. § 1396 *et seq.,* have uniformly held that a zero error standard could be properly imposed.[3] *See Massachusetts v. Secretary,* 749 F.2d 89 (1 Cir.1984); *California v. Settle,* 708 F.2d 1380 (9 Cir.1983) (relying on *Maryland v. Mathews* for the proposition that the Act does not require federal funding for erroneous payments); *Georgia v. Califano,* 446 F.Supp. 404 (N.D.Ga. 1977). We think these authorities support the result we reach.

█ Finally, we reject Maryland's argument, premised on *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981), that the relationship between Maryland and the federal government in the AFDC program is based on contractual principles so that Maryland may invoke the

1. Maryland has a theoretical right to recover payments to an ineligible recipient and overpayments. But we recognize that the right is more theoretical than real. It would be the rare case in which the recipient would be financially able to make repayment or where the amount involved would justify the costs of recovery.

2. Presumably because the statement was dictum, no party before us ascribes any preclusive effect to that decision. It is curious, however, that in that case, Maryland apparently made no effort to seek a modification of the opinion or a clarification of tolerance levels in the period until the Secretary adopted valid tolerance levels, or, if it sought a modification or classification and its motion was denied, that it did not appeal.

3. Although federal-state cooperation in the Medicaid and AFDC programs are parallel, and the scheme for estimating the amount of federal participation is similar under both programs, the statutory language describing federal payments to the states under the two programs differs.

established contractual doctrine of impossibility of performance. That doctrine, as we view it, relates to commercial contracts and not to grant in aid programs. The latter, we think, are governed by the applicable statute and implementing regulations. *See* R. Cappalli, Federal Grants and Cooperative Agreements, § 8.01 (1982). These, in turn, as we perceive them, permit the action taken by the Secretary.

AFFIRMED.